JASON WOJCIECHOWSKI (SBN 263911)
jasonw@bushgottlieb.com
SAMANTHA M. KENG (SBN 341550)
skeng@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Defendant Masters, Mates & Pilots

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL B. MARTIN,<br>Plaintiff,<br>vs.<br>MASTERS, MATES & PILOTS, *et al.*,<br>Defendants, | **Case No. 23-cv-04859-RFL**<br>**NOTICE OF MOTION AND MOTION OF MASTERS, MATES & PILOTS TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br>Judge: Hon. Rita F. Lin<br>Date: January 16, 2024<br>Time: 10:00 a.m.<br>Crtrm.: 15 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 16, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Rita F. Lin, located in the United States Courthouse, 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, CA 94102, Defendant Masters, Mates & Pilots ("Union") will and hereby does move this Court to Dismiss. This Notice of Motion supersedes the Notice of Motion filed and served on November 22, 2023, pursuant to the reassignment of this case on November 27, 2023 from the Honorable James Donato to the Honorable Rita F. Lin.

This Motion seeks dismissal of the complaint with prejudice because any state-law claims against the Union are preempted by the federal duty of fair representation and are thus time-barred; the allegations of fact do not state a plausible claim for relief as duty of fair representation claims; and the allegations do not state a plausible claim for relief even

taken as labeled by Plaintiff. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: November 28, 2023

BUSH GOTTLIEB, A Law Corporation

By: /s/ Samantha M. Keng
SAMANTHA M. KENG
Attorneys for Defendant Masters, Mates & Pilots

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. SUMMARY OF ALLEGATIONS ........ 1

A. Factual Allegations ........ 1

B. Causes of Action ........ 2

III. ARGUMENT ........ 3

A. Standard for Motion to Dismiss Under Rule 12(b)(6) ........ 3

B. The State-Law Claims Are Preempted ........ 3

C. Because the Complaint Really Alleges a Duty of Fair Representation Claim, the Purported State-Law Claims Are Time-Barred ........ 4

D. Plaintiff Has Not Pleaded Sufficient Facts to State a Claim for Breach of the Duty of Fair Representation ........ 5

E. The State-Law Claims Fail Even If Not Preempted ........ 8

1. There Is No "Compelled Consent" Cause of Action ........ 8

2. There is No Right to Work While Unvaccinated ........ 9

3. Plaintiff's Tortious Interference with Contract Claim Must Fail ........ 11

F. There Is No Cause of Action for Denial of Right to Refuse an EUA Medical Product ........ 12

G. Amendment Would Not Cure These Fatal Flaws ........ 13

IV. CONCLUSION ........ 14


BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Ackley v. W. Conf. of Teamsters*,
958 F.2d 1463 (9th Cir. 1992) ........ 8

*Adkins v. Mireles*,
526 F.3d 531 (9th Cir. 2008) ........ 4

*Air Line Pilots v. O'Neill*,
499 U.S. 65 (1991) ........ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ........ 3

*Bautista v. Pan Am. World Airlines*,
828 F.2d 546 (9th Cir. 1987) ........ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Brnovich v. Biden*,
562 F. Supp. 3d 123 (D. Ariz. 2022) ........ 12

*Burcham v. City of Los Angeles*,
562 F. Supp. 3d 694 (C.D. Cal. 2022) ........ 8, 9

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990) ........ 13

*DelCostello v. Teamsters*,
462 U.S. 151 (1983) ........ 4

*Demetris v. Transp. Workers*,
862 F.3d 799 (9th Cir. 2017) ........ 6

*Elec. Workers v. Foust*,
442 U.S. 42 (1979) ........ 4

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ........ 3

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Ford Motor v. Huffman*,
345 U.S. 330 (1953) .......... 5, 6

*Galindo v. Stoody Co.*,
793 F.2d 1502 (9th Cir. 1986) .......... 4, 6

*Health Freedom Def. Fund v. Reilly*,
No. CV-21-8688, 2022 WL 5442479 (C.D. Cal. Sept. 2, 2022) .......... 9

*Herring v. Delta Airlines*,
894 F.2d 1020 (9th Cir. 1990) .......... 6

*Humphrey v. Moore*,
375 U.S. 335 (1964) .......... 6

*Ivey v. Bd. of Regents of the Univ. of Alaska*,
673 F.2d 266 (9th Cir. 1982) .......... 3

*Jacobson v. Mass.*,
197 U.S. 11 (1905) .......... 9

*Jay v. SEIU United Healthcare Workers W.*,
203 F. Supp. 3d 1024 (N.D. Cal. 2016) .......... 6

*Johnson v. Brown*,
567 F. Supp. 3d 1230 (D. Or. 2021) .......... 12

*Kheriaty v. Regents of the Univ. of Cal.*,
No. 22-55001, 2022 WL 17175070 (9th Cir. Nov. 9, 2022) .......... 9

*Kiss v. Best Buy Stores*,
No. 22-CV-00281, 2022 WL 17480936 (D. Or. Dec. 6, 2022) .......... 13

*Knowles v. Pac. Gas & Elec.*,
No. 07-CV-2284, 2008 WL 2705097 (N.D. Cal. Jul. 8, 2008) .......... 6

*Lil' Man in the Boat v. City & Cty. of San Francisco*,
5 F.4th 952 (9th Cir. 2021) .......... 13

*Madison v. Motion Picture Set Painters & Sign Writers*,
132 F. Supp. 2d 1244 (C.D. Cal. 2000) .......... 4

*Miller v. Farris*,
No. CV 21-9551, 2023 WL 4680370 (C.D. Cal. Jun. 14, 2023) .......... 13

*Milne Emps. v. Sun Carriers, Inc.*,
960 F.2d 1401 (9th Cir. 1992) .......... 11

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Motor Coach Emps. v. Lockridge*,
403 U.S. 274 (1971) ... 6

*Nicholas Homes v. M & I Marshall & Ilsley Bank*,
No. CV-09-2079, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ... 9

*Pearson v. Cooke*,
No. 22-CV-9, 2022 U.S. Dist. LEXIS 85890 (D. Nev. May 12, 2022) ... 10

*Rachford v. Air Line Pilots*,
No. C 03-0618, 2006 WL 1699578 (N.D. Cal. Jun. 16, 2006) ... 11

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984) ... 3

*Saliba v. Allied Pilots*,
No. CV-22-1025, 2023 WL 2648141 (D. Ariz. Mar. 27, 2023) ... 7

*Seitz v. Teamsters*,
No. 23-CV-01716, 2023 WL 6883358 (N.D. Cal. Oct. 17, 2023) ... 4

*Spellacy v. Airline Pilots*,
156 F.3d 120 (2d Cir. 1998) ... 8

*Steckman v. Hart Brewing*,
143 F.3d 1293 (9th Cir. 1998) ... 13

*Steelworkers v. Rawson*,
495 U.S. 362 (1990) ... 7

*Stevens v. Moore Bus. Forms*,
18 F.3d 1443 (9th Cir. 1994) ... 6

*Truesdell v. S. Cal. Permanente Med. Grp.*,
151 F. Supp. 2d 1161 (C.D. Cal. 2001) ... 7

*Vaca v. Sipes*,
386 U.S. 171 (1967) ... 5

*Valdez v. Grisham*,
No. 21-CV-783, 2022 WL 3577112 (D.N.M. Aug. 19, 2022) ... 7

**California Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ... 11

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Long Beach Memorial Med. Ctr. v. Kaiser Foundation Health Plan*,
71 Cal. App. 5th 323 (2021) ........ 8

*Moore v. Regents of Univ. of Cal.*,
51 Cal. 3d 120 (1990) ........ 9

*Nally v. Grace Cmty. Church*,
47 Cal. 3d 278 (1988) ........ 9

*PM Grp. v. Stewart*,
154 Cal. App. 4th 55 (2007) ........ 11

*Thor v. Superior Court*,
5 Cal. 4th 725 (1993) ........ 10

**Federal Statutes**

21 U.S.C.
§ 360bbb-3 ........ 12, 13

29 U.S.C.
§§ 141–97 ........ 4
§ 185 ........ 11

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## I. INTRODUCTION

Plaintiff Daniel B. Martin, proceeding *pro se*, attempts to bring suit against Defendant Masters, Mates & Pilots ("Union"), alleging that the Union colluded with Defendant Matson Navigation Co. ("Matson") to deprive Plaintiff of his purported contractual right to work by instituting a vaccination requirement at the height of the COVID-19 pandemic. The Complaint contains three purported state-law causes of action and one federal-law cause of action, but the allegations of fact make clear that Plaintiff's state-law claims can only be plausibly construed as a duty of fair representation claim, because all of the acts identified by Plaintiff as objectionable are premised entirely on the Union's bargaining conduct. As such, Plaintiff's state-law claims are preempted by the duty of fair representation; analyzing them as such, they are time-barred and the factual allegations fail to state a plausible claim for relief under the deferential duty of fair representation standard. The purported federal-law cause of action relies on an inapplicable statute for which there is no private right of action. And even if the state-law claims are not construed as duty of fair representation claims, two of the causes of action are invented, and the third is a tortious interference of contract claim despite Plaintiff having failed to describe what contract the Union supposedly interfered with.

Therefore, the Union respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, without leave to amend.

## II. SUMMARY OF ALLEGATIONS

### A. Factual Allegations

The factual allegations in the Complaint are taken as true solely for purposes of this Motion. Plaintiff is a deck officer licensed by the United States Coast Guard and a member of the Union who is available for work on union-contracted vessels at the Port of Oakland and operating out of the Port of Oakland or other union halls, including Matson vessels. Compl. ¶ 1. On or around August 26, 2021, a Memorandum of Understanding ("MOU") between Matson and the Union was posted at the Union dispatch hall in Oakland, the practical effect of which was that, effective October 1, 2021, no member could be

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

dispatched to work on a Matson-operated vessel unless the member provided proof that they had received one of three proffered COVID-19 vaccinations. Compl. ¶¶ 4, 16–17. Plaintiff objected in writing to Matson and the Union on September 20, 2021, expressing that he did not consent to receiving a vaccination and that he would not comply with the vaccination requirement due to the ”experimental” nature of the vaccinations and his “sincerely held belief that [his] God created immune system is sufficient.” Compl. ¶ 18 & Exh. B. Matson denied Plaintiff's request for religious exemption. Compl. ¶ 19. On December 22, 2021, Plaintiff requested a grievance hearing with the Union, which was denied on February 14, 2022 following a telephonic hearing. Compl. ¶ 23. Plaintiff alleges that he intended to work on Matson vessels after October 1, 2021 and was denied the opportunity to obtain work based on his refusal to comply with the vaccination requirement. Compl. ¶ 53.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

### B. Causes of Action

Plaintiff sets forth four causes of action in connection with this series of events. The first cause of action, which Plaintiff titles “compelled consent,” asserts that, by entering into the MOU with Matson requiring that all persons seeking dispatch on Matson vessels receive a vaccination, the Union coerced Plaintiff into making the “stark decision” to either go to work or submit to an experimental medical product. Compl. ¶ 26. The second cause of action, citing a statute pertaining to the informed consent requirements for Emergency Use Authorization (“EUA”) issued by the U.S. Food and Drug Administration (“FDA”), concocts a substantive right to refuse EUA medical products where there is none. Compl. ¶ 40. The third cause of action argues by analogy that, as California law grants even incarcerated individuals the right to refuse medical treatment, Plaintiff likewise possesses such a right in the workplace. Compl. ¶ 48. And the fourth cause of action is framed as a claim for tortious interference with contract, without identifying the contract with which the Union supposedly interfered. Compl. ¶¶ 50–51.

## III. ARGUMENT

The above allegations, even construed in the light most favorable to Plaintiff and making allowances for his *pro se* status, do not state a plausible claim for relief.

### A. Standard for Motion to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level," and "formulaic recitation of the elements of a cause of action" will not satisfy this requirement. *Twombly*, 550 U.S. at 555. Accordingly, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim," *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996), and even a liberal interpretation of a claim may not "supply essential elements of the claim that were not initially pled," *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Dismissal is therefore appropriate where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

### B. The State-Law Claims Are Preempted

The true claim at the core of the Complaint—and thus at the core of the three state-law causes of action—is that the Union entered into the MOU regarding vaccination "without consulting the membership." Compl. ¶ 4. In other words, Plaintiff alleges that the Union failed to adequately represent him in the course of its bargaining conduct: a classic duty of fair representation claim. In these situations, "the court must look to the conduct at the heart of the controversy" to determine whether it truly states claims for relief under

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

state law or whether it is a duty of fair representation suit. *Madison v. Motion Picture Set Painters & Sign Writers*, 132 F. Supp. 2d 1244, 1256–59 (C.D. Cal. 2000) (finding California Fair Employment and Housing Act claims preempted by the duty of fair representation); *Seitz v. Teamsters*, No. 23-CV-01716, 2023 WL 6883358, at *13 (N.D. Cal. Oct. 17, 2023) ("[A] fair-representation claim that is simply given a different label should be treated by the court as a fair-representation claim."). The duty of fair representation applies to all representational activity in which the union engages, including the "negotiation, administration, and enforcement of collective bargaining agreements." *Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979). Claims alleging a failure by a labor union to adequately represent a member—which is precisely Plaintiff's claim here—are preempted by the duty of fair representation regardless of any supposed state-law underpinnings. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."); *Madison*, 132 F. Supp. 2d at 1256 ("Since the duty is derived from the [Labor-Management Relations Act, 29 U.S.C. §§ 141–97], it is defined solely by federal law and preempts the application of state substantive law that seeks to regulate conduct within its ambit.") (citations omitted). Regardless of how Plaintiff packages his allegations, he cannot mask the central nature of the Complaint or escape the well-established principles governing fair representation claims.

### C. <u>Because the Complaint Really Alleges a Duty of Fair Representation Claim, the Purported State-Law Claims Are Time-Barred</u>

The statute of limitations for a duty of fair representation suit is an intentionally short six months, and "generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986); *see also DelCostello v. Teamsters*, 462 U.S. 151, 172 (1983) (holding that six-month statute of limitations in section 10(b) of the National Labor Relations Act applies to duty of fair representation claims). As set forth in the Complaint

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

itself, the MOU detailing the vaccination requirement was posted at the Union dispatch hall on August 26, 2021. Compl. ¶ 16. Plaintiff does not specify if he immediately took notice of the vaccination requirement when it was posted, but he was certainly aware of the requirement by the time he objected in writing to the Union and Matson on September 20, 2021. Therefore, any claim by Plaintiff related to the Union's bargaining of the MOU or lack of notice to the members must have been filed by at latest March 20, 2022.

To the extent Plaintiff complains that the Union should have filed or advanced a grievance against Matson, that claim is also time-barred because Plaintiff states that the Union denied his grievance on February 14, 2022 after a telephonic hearing. Compl. ¶ 23. Thus, any claim regarding the Union's decision not to file a grievance must have been filed by August 14, 2022.

Because Plaintiff did not file his Complaint until September 2023 and makes no allegations of fact giving rise to any kind of tolling or other reasons not to apply the statute of limitations, the preempted state-law claims should be dismissed as time-barred.

### D. Plaintiff Has Not Pleaded Sufficient Facts to State a Claim for Breach of the Duty of Fair Representation

Even if the Complaint were timely, the allegations cannot sustain a plausible duty of fair representation claim. Because a union must represent disparate—sometimes conflicting—groups and has scarce resources, the courts are deferential to a union's decisions, and will not second-guess them as long as they are not "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The Supreme Court has long recognized that a union enjoys a wide range of bargaining latitude:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents . . . .

*Ford Motor v. Huffman*, 345 U.S. 330, 338 (1953). In line with this reasoning, the Ninth Circuit has acknowledged that the duty of fair representation doctrine should be "narrowly

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

construed," *Galindo*, 793 F.2d at 1514, because a union "must be able to focus on the needs of its whole membership without undue fear of law suits from individual members," *Herring v. Delta Airlines*, 894 F.2d 1020, 1023 (9th Cir. 1990) (citing *Bautista v. Pan Am. World Airlines*, 828 F.2d 546, 549 (9th Cir. 1987)).

A union's conduct is arbitrary only if it lacks a rational basis, *Stevens v. Moore Bus. Forms*, 18 F.3d 1443, 1447 (9th Cir. 1994), or "is so far outside a 'wide range of reasonableness' as to be irrational," *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted) (quoting *Huffman*, 345 U.S. at 338). Bad faith requires "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964); *see also Demetris v. Transp. Workers*, 862 F.3d 799, 808 (9th Cir. 2017) (quoting same standard). And the discrimination prong is equally deferential and can only be proven "where the aggrieved members set forth 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Demetris*, 862 F.3d at 806 (quoting *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971)).

This Motion should therefore be granted unless Plaintiff has alleged facts that, if proven, would rise to the level of arbitrary, discriminatory, or bad faith conduct by the union. No such facts are presented here, and conclusory allegations do not suffice. *See, e.g.*, *Jay v. SEIU United Healthcare Workers W.*, 203 F. Supp. 3d 1024, 1041–42 (N.D. Cal. 2016) (dismissing duty of fair representation claim because complaint "does not provide enough facts . . . to draw a reasonable inference" of breach); *Knowles v. Pac. Gas & Elec.*, No. 07-CV-2284, 2008 WL 2705097, at *6 (N.D. Cal. Jul. 8, 2008) (dismissing duty of fair representation claim because "[p]laintiffs do not provide any facts that explain how [union]'s failure to act constituted fraud, deceitful action or dishonest conduct").

The policies underlying the deferential standard for evaluating duty of fair representation claims hold particular weight in the context of the Union's response to a global health crisis. Plaintiff's Complaint deliberately downplays the extent of the emergency generated by the COVID-19 pandemic, which required that the Union proactively take immediate steps to ensure the safety and health of its members,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

particularly those stationed on oceangoing vessels in close quarters with one another and for long periods of time. Agreeing to a vaccination requirement for employees on Matson vessels as part of an effort to prevent rapid spread of the virus is entirely reasonable, and Plaintiff pleads no facts showing that the Union's agreement was in bad faith or discriminatory. In the analogous context of COVID-19 vaccine mandates adopted by various state actors, courts have unanimously found that requiring vaccination is a legitimate means of "stemming the spread of COVID-19" and protecting public health and safety during the pandemic. *See Valdez v. Grisham*, No. 21-CV-783, 2022 WL 3577112, at *33 (D.N.M. Aug. 19, 2022) (citing cases).

Plaintiff's personal dissatisfaction with a vaccination requirement—no matter how fervent—does not entitle him to relief. *See Saliba v. Allied Pilots*, No. CV-22-1025, 2023 WL 2648141, at *6 (D. Ariz. Mar. 27, 2023) (denying plaintiff's duty of fair representation claim based on union's failure to oppose an employer airline's COVID-19 mask policy or "advance [his] idiosyncratic view," finding that while plaintiff "might disagree with the science . . . his disagreement does not make [the union]'s endorsement of [the employer]'s mask policy arbitrary, discriminatory, or in bad faith"). "A union does not have a freestanding duty to address every problem, or even every workplace problem, that a bargaining-unit employee may have." *Steelworkers v. Rawson*, 495 U.S. 362, 374–75 (1990). To establish the Union's liability, "it is not enough that the union's representation does not meet Plaintiff's expectations of what that representation of her entails." *Truesdell v. S. Cal. Permanente Med. Grp.*, 151 F. Supp. 2d 1161, 1170 (C.D. Cal. 2001). Plaintiff must show a violation of the law, not a violation of what he wishes the law were. Plaintiff may have wanted the Union to capitulate to his beliefs about the vaccine, but the Union's choice not to do so and to instead promote the health and safety of its members at large does not mean it acted unreasonably, arbitrarily, or discriminatorily.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**E. The State-Law Claims Fail Even If Not Preempted**

Even without casting Plaintiff's allegations as duty of fair representation claims, the state-law claims consist entirely of fabricated or mischaracterized causes of action, none of which state a cognizable legal theory or allege facts that would support such a theory.

**1. There Is No "Compelled Consent" Cause of Action**

In his creatively titled first cause of action, Plaintiff argues that the Union forced him to choose between submitting to an "experimental" medical product and going to work, without having identified "a binding authority by which [the Union] may exercise dominion over Plaintiff's body and well being [sic]." Compl. ¶ 16. A logical reading of Plaintiff's claim, however, immediately dispels a conclusion that Plaintiff was subject to unlawful coercion, or any coercion. Plaintiff acknowledges that his purported injury occurred because he "*refused* to be coerced into a position of compelled consent." Compl. ¶ 32 (emphasis added). Thus, Plaintiff's injury is traceable only to his freely exercised agency, not to any action or inaction by the Union. *See Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 n.4 (C.D. Cal. 2022) (noting, in the context of an ordinance requiring city employees to be vaccinated against COVID-19, that a "hard choice doesn't amount to coercion") (internal citations omitted). Plaintiff has therefore failed to state any facts that would permit this Court to draw a reasonable inference that the Union caused any of Plaintiff's alleged injuries. *See Spellacy v. Airline Pilots*, 156 F.3d 120, 126 (2d Cir. 1998) ("Plaintiffs must [also] demonstrate a causal connection between the union's wrongful conduct and their injuries.") (citing, *inter alia*, *Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1472 (9th Cir. 1992)).

Furthermore, a "compelled consent" cause of action has no footing in California law. There is no cognizable tort known as "compelled consent" in California, and Plaintiff's Complaint cannot supply the essential elements of such a claim for the basic reason that it does not exist. As California courts have recognized, public policy militates against needlessly expanding beyond the set of generally accepted torts that have longstanding foundation in the law. *See, e.g.*, *Long Beach Memorial Med. Ctr. v. Kaiser*

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Foundation Health Plan*, 71 Cal. App. 5th 323, 337 (2021) ("The social costs of recognizing a new tort duty . . . are staggering."); *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) ("[W]e should be hesitant to 'impose [new tort duties] when to do so would involve complex policy decisions,' especially when such decisions are more appropriately the subject of legislative deliberation and resolution.") (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 299 (1988)). The Complaint provides no compelling justification for upsetting or departing from this well-settled approach, particularly for a federal court. *See Nicholas Homes v. M & I Marshall & Ilsley Bank*, No. CV-09-2079, 2010 WL 1759453, at *5 (D. Ariz. Apr. 30, 2010) (declining to recognize new tort that the state's courts had not).

**2. There is No Right to Work While Unvaccinated**

Plaintiff's third cause of action hinges on his assertion that California law protects the right of the incarcerated to refuse medical treatment; according to Plaintiff, he "has no less right to refuse medical treatment as a condition of lawful employment than a man in custody at a State prison." Compl. ¶ 48. However, "[t]he Supreme Court has long rejected a fundamental right to refuse vaccination," *Burcham*, 562 F. Supp. 3d at 706; *see Jacobson v. Mass.*, 197 U.S. 11 (1905), and the Ninth Circuit recently applied this rationale in declining to find a fundamental right "to be free from a vaccine mandate at a workplace," *Kheriaty v. Regents of the Univ. of Cal.,* No. 22-55001, 2022 WL 17175070, at *3 (9th Cir. Nov. 9, 2022). Moreover, the District Court for the Central District of California has expressly rejected a plaintiff's proposal to analyze COVID-19 vaccine mandates through the lens of "the right to refuse unwanted medical treatment." *Health Freedom Def. Fund v. Reilly*, No. CV-21-8688, 2022 WL 5442479, at *14 (C.D. Cal. Sep. 2, 2022).

By this same reasoning, Plaintiff's claim falls short. There are no factual allegations to raise to the level of plausibility Plaintiff's conclusory assertion that the Union "colluded" with Matson to "intentionally deny Plaintiff his right to refuse medical treatment." Compl. ¶ 48. Plaintiff refused to obtain the vaccine, and he did so by virtue of his own free will, after making a conscious choice to either get the vaccine and be

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

available to work aboard Matson vessels or refrain from getting the vaccine and not work aboard Matson vessels. Presentation of that choice does not represent coercion by the Union and Matson via bargaining of the MOU, and Plaintiff's attempt to draw a baseless comparison between his status and that of an individual in state custody does not change that essential fact. Because Plaintiff insists upon such an analogy, however, it is worth noting that the Nevada District Court has specifically denied an inmate's claim for denial of the right to refuse medical treatment based on a COVID-19 vaccination requirement; in that case, the plaintiff did not allege that he was forced to receive a vaccine or threatened with punishment if he refused to comply. *Pearson v. Cooke*, No. 22-CV-9, 2022 U.S. Dist. LEXIS 85890, at *14 (D. Nev. May 12, 2022). Instead, the plaintiff there only alleged that he could not participate in a specific prison work program because he refused to receive a vaccination, which "fail[ed] to state a colorable claim for denial of the right to refuse medical treatment." *Id*. Likewise, Plaintiff here does not assert that he was denied bodily autonomy or forced to submit to an involuntary vaccination. His argument is that he could not pursue the specific employment he wanted on his own terms, which cannot sustain a claim for relief.

Moreover, Plaintiff's depiction of the law is itself flawed. The California case Plaintiff cites, *Thor v. Superior Court*, 5 Cal. 4th 725, 732 (1993), wrestles with whether medical officials at a state prison have an affirmative duty to administer life-sustaining treatment to an incarcerated adult against his consent, a question the California Supreme Court answered in the negative. Not even the most strained reading of this authority could support what Plaintiff claims it does. *Thor* and its progeny do not create the right of a private plaintiff to maintain his employment despite refusing to comply with a uniformly applied vaccine mandate designed to ensure the safety of his fellow employees. Plaintiff may indeed have a right to "self-determination and bodily integrity," *id*. at 739, but that right does not extend so far as to shield him from any and all consequences that flow as a result of his personal choice to refrain from receiving a vaccine during a global pandemic.

### 3. Plaintiff's Tortious Interference with Contract Claim Must Fail

Plaintiff's final cause of action repackages his claims as a tortious interference with contract, without once identifying the contract with which the Union allegedly interfered. The existence of a contract is of course a core element of a tortious interference claim; Plaintiff cannot satisfy the pleading standard—indeed, Plaintiff has not even put the Union on notice of the basis of his claim—without identifying the contract the Union allegedly interfered with.

If Plaintiff is referring to the collective-bargaining agreement ("CBA") in place between the Union and Matson, it is well-established in California law that "a contracting party is incapable of interfering with the performance of his or her own contract and cannot be held liable in tort for conspiracy to interfere with his or her own contract." *PM Grp. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 513–14 (1994) ("The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance."). Plaintiff can supply no legal basis for his claim that the Union is capable of interfering with its own CBA.

Furthermore, the Ninth Circuit has held that where a tortious interference with contract claim is grounded in a CBA—and whose resolution thus requires interpreting that agreement—the claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Milne Emps. v. Sun Carriers, Inc.,* 960 F.2d 1401, 1412 (9th Cir. 1992) (holding claim preempted because one element of tortious interference required court to determine whether underlying terms of CBA were breached); *Rachford v. Air Line Pilots*, No. C 03-0618, 2006 WL 1699578, at *14 (N.D. Cal. Jun. 16, 2006) (citing *Applied Equipment* in finding plaintiffs' tortious interference with the CBA claim against defendant airline preempted by the Railway Labor Act and meriting dismissal because "[u]nder California law, a party to a contract cannot be liable for interference with the contract").

**F. <u>There Is No Cause of Action for Denial of Right to Refuse an EUA Medical Product</u>**

In his second cause of action, Plaintiff claims to have "repeatedly identified a substantive right" to refuse administration of an EUA medical product. Compl. ¶ 40. The statutory hook on which Plaintiff attempts to hang his hat is 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III), which—according to Plaintiff—conditions the FDA's grant of an emergency use authorization on certain "informed consent requirements" to "ensure that individuals to whom the product is administered are informed" that they have "the option to accept or refuse administration of the product." Compl. ¶ 34. Even if that were a correct characterization, Plaintiff introduces no facts showing that he was not made aware of his option to refuse the vaccination. In fact, Plaintiff's repeated assertion that he would not be complying with the requirement demonstrates that he not only knew but *exercised* his right to refuse administration of the vaccine. *See* Compl. Exhs. A and B; *see also Brnovich v. Biden*, 562 F. Supp. 3d 123, 161–62 (D. Ariz. 2022) (finding that § 360bbb-3(e) "confers no substantive right to refuse a vaccine," and that even if it did, a vaccination mandate would not abridge that right, as "[a] hard choice, for which there may be significant consequences, is still a choice"); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1256–57 (D. Or. 2021) (denying plaintiffs' informed consent objection to a vaccination requirement on grounds that the "Vaccine Orders presents Plaintiffs with a difficult choice, but it is nevertheless a choice," and "Plaintiffs may either get the vaccine, apply for an exception, or look for employment elsewhere").

It is abundantly clear that the statute is not aimed at restricting unions' bargaining choices and provides no avenue for the relief Plaintiff seeks. The statute outlines the conditions under which the Secretary of Health and Human Services may authorize a product for emergency use. *See* 21 U.S.C. § 360bbb-3(a)(1); *Johnson*, 567 F. Supp. 3d at 1255 ("The statute providing for EUA protocols only applies to the Secretary of Health and Human Services," and its "conditions of informed consent only relate to those who 'carr[y] out any activity for which the authorization is issued,' which are the medical

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

providers who issue the vaccines, not those who issue vaccine mandates."). No provision implies the grant of a private right of action, and in general courts do not imply a private right of action unless the statute "display[s] an intent to create a private remedy." *Lil' Man in the Boat v. City & Cty. of San Francisco*, 5 F.4th 952, 959 (9th Cir. 2021) ("The absence of remedial language is a key clue that Congress did not intend to imply a private right of action."). In a recent case where a patron challenged a store's mask requirement during the COVID-19 pandemic, the Oregon District Court dismissed the plaintiff's section 360bbb-3 claim with prejudice, finding that "[e]ven if [plaintiff] could adequately plead state action, courts have consistently held that the Emergency Use Authorization Act [§ 360bbb-3] provides no private right of action." *Kiss v. Best Buy Stores*, No. 22-CV-00281, 2022 WL 17480936, at *21 (D. Or. Dec. 6, 2022); s*ee also Miller v. Farris*, No. CV 21-9551, 2023 WL 4680370, at *26 (C.D. Cal. Jun. 14, 2023) (holding that section 360bbb-3 "does not provide a private right of action for Plaintiff to sue" a defendant school district for enforcement of COVID-19 mask, testing, and vaccination requirements). For that same fundamental reason, Plaintiff's claim here must fail.

### G. <u>Amendment Would Not Cure These Fatal Flaws</u>

Leave to amend should be denied where "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998).

There is no way to rescue Plaintiff's *very* untimely claims from the statute of limitations defense, so all the claims that are preempted by the duty of fair representation will remain subject to dismissal regardless of any new factual allegations.

Further, no additional factual allegations could cure the facts that there is no "compelled consent" cause of action; that the EUA statute does not provide a private right

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

of action; and that Plaintiff was, fundamentally, not denied bodily autonomy or prevented from refusing medical care.

Therefore, the Complaint should be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Union respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint in its entirety, without leave to amend.

DATED: November 28, 2023

BUSH GOTTLIEB, A Law Corporation

By: /s/ Samantha M. Keng
SAMANTHA M. KENG
Attorneys for Defendant Masters, Mates & Pilots

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260