JASON A. GELLER (SBN 168149)
Email:  jgeller@fisherphillips.com
HYUNKI (JOHN) JUNG (SBN 318887)
Email:  hjung@fisherphillips.com
FISHER & PHILLIPS LLP
One Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone:  (415) 490-9000
Facsimile:   (415) 490-9001

Attorneys for Defendant
Matson Navigation Company, Inc.,
*erroneously* sued as "Matson Navigation Co."

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL B. MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>MASTERS, MATES & PILOTS; and<br><br>MATSON NAVIGATION CO.,<br><br>Defendants. | CASE NO.: 3:23-cv-04859-RFL<br><br>**DEFENDANT MATSON NAVIGATION COMPANY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF DANIEL B. MARTIN'S THIRD AMENDED COMPLAINT**<br><br>DATE:           November 5, 2024<br>TIME:           10:00 a.m.<br>CTRM:          15<br>JUDGE:         Hon. Rita F. Lin<br><br>TAC Filed:       August 15, 2024<br>SAC Filed:       April 16, 2024<br>FAC Filed:       December 12, 2023<br>Complaint Filed: September 22, 2023<br>Trial Date:       None Set |

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on November 5, 2024, at 10:00 a.m., or as soon thereafter as the

4

matter may be heard in Courtroom 15 of the above-entitled court, located at San Francisco Courthouse,

5

Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable Rita

6

F. Lin, Defendant Matson Navigation Company, Inc. (erroneously sued as Matson Navigation Co.)

7

("Matson"), by and through its undersigned counsel, will and hereby move for an order dismissing each

8

of Plaintiff Daniel B. Martin's ("Plaintiff") claims set forth in the Third Amended Complaint (the

9

"TAC") (Dkt. 66), *with prejudice* under the Federal Rules of Civil Procedure 12(b)(6) for failure to state

10

a claim.

11

This motion is based on the grounds that Plaintiff's TAC cannot "'state a claim to relief that is

12

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This motion is based on this Notice

13

of Motion and Motion, the following Memorandum of Points and Authorities, and such other matters as

14

may be presented to the Court at or before the hearing on this motion.

15

16

DATE: August 29, 2024                         FISHER & PHILLIPS LLP

17

                                        By:   */s/Jason A. Geller*

18                                             Jason A. Geller
                                               Hyunki (John) Jung
19                                             Attorneys for Defendant
                                               Matson Navigation Company, Inc. (*erroneously*
20                                             *named as* Matson Navigation Co.)

21

22

23

24

25

26

27

28

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 52072785.1

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 7

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................... 9

III.    SUMMARY OF RELEVANT FACTS ................................................................. 9

IV.     PROCEDURAL HISTORY .................................................................................. 10

V.      LEGAL STANDARD ........................................................................................... 12

VI.     LEGAL ARGUMENT .......................................................................................... 13

    A.    Plaintiff's First Cause of Action for "Medical Battery" Should be Dismissed Because it Fails to State a Plausible Claim Upon Which Relief can be Granted. ..... 13

        1.    Plaintiff Cannot Plausibly Allege a Prima Facie Case for Medical Battery. ...................................................................................................... 13

        2.    Plaintiff's Reliance of the California Constitution to Argue the Alleged Violation of his Right to Refuse Medical Treatment is Unavailing. ............. 14

        3.    Mandating Vaccinations as a Condition of Employment is Lawful. ............. 16

    B.    Plaintiff's Second Cause of Action for "42 U.S.C. § 1985: Conspiracy Against Rights" Cannot Survive Dismissal. .............................................................. 17

    C.    To the Extent the Court Interprets Plaintiff as Attempting to Assert a Title VII Claim, it Fails as a Matter of law. ............................................................... 19

        1.    Plaintiff's Purported Title VII Claims are Time-Barred. ............................... 19

        2.    Plaintiff's Title VII Claim Should Also be Dismissed Because the TAC Fails to Plausibly Allege a Prima Facie Case. ................................................ 20

    D.    Plaintiff Should not be Afforded Additional Leave to Amend Again as Further Amendment Would Be Highly Futile. ...................................................... 21

VII.    CONCLUSION ..................................................................................................... 22

FP 52072785.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aldabe v. Aldabe,*
    616 F.2d 1089 (9th Cir. 1980) ............................................................................................ 17

*America's Frontline Doctors v. Wilcox,*
    No. EDCV 21-1243 JGB (KKx), 2022 WL 1514038, (C.D. Cal. May 5, 2022)............................ 16

*Balistreri v. Pacifica Police Dept,*
    901 F.2d 696 (9th Cir. 1988) ............................................................................................ 12

*Beckerich v. St. Elizabeth Med. Ctr.,*
    563 F.Supp.3d 633 (2021) ................................................................................................ 16

*Behringer v. Cal. Polytechnic State Univ.,*
    Case No. 5:23-cv-00934-JFW (SK), 2023 WL 6811813 (C.D. Cal. Sept. 15, 2023)................ 17, 18

*Beusgens v. Galloway,*
    No. 07-cv-43, 2007 WL 1674097 (D. Or. June 7, 2007)........................................................ 22

*Burcham v. City of Los Angeles,*
    562 F.Supp.3d 694 (2022) ................................................................................................ 15

*Cairns v. Franklin Mint Co.,*
    24 F.Supp.2d 1013 (C.D. Cal. 1998) .................................................................................. 12

*Calhoun v. VA MC San Diego,*
    No. 08-cv-2064, 2009 WL 1227891 (S.D. Cal. May 5, 2009) ................................................ 21

*Callahan v. Woods,*
    658 F.2d 679 (9th Cir. 1981) ............................................................................................ 21

*Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.,*
    107 Cal. App. 4th 1260 (2003) .......................................................................................... 13

*DelRio-Mocci v. Connolly Properties Inc.,*
    672 F.3d 241 (3d Cir. 2012)............................................................................................... 22

*Doe v. San Diego Unified Sch. Dist.,*
    19 F.4th 1173 (9th Cir. 2021) ........................................................................................... 21

*Finkbeiner v. Geisinger Clinic,*
    623 F. Supp. 3d 458 (M.D. Pa. 2022) ................................................................................ 21

*Flowers v. First Hawaiian Bank,*
    295 F.3d 966 (9th Cir. 2002) ............................................................................................ 21

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 52072785.1

*Gerritsen v. de la Madrid Hurtado,*
   819 F.2d 1511 (9th Cir. 1987) ........................................................................... 17, 18

*Griffin v. Breckenridge,*
   403 U.S. 88 (1971) ................................................................................................... 17

*Haddock v. Board of Dental Examiners,*
   777 F 2d 462 (9th Cir. 1985) ................................................................................. 13

*Health Freedom Defense Fund v. Reilly,*
   CV 21-8688 DSF (PVCx), 2022 WL 5442479 (C.D. Cal. Sept. 2, 2022) ............ 16

*Intri-Plex Tech., Inc. v. Crest Grp., Inc.,*
   499 F.3d 1048 (9th Cir. 2007) ................................................................................. 9

*Jacobson v. Massachusetts,*
   197 U.S. 11 (1905) ................................................................................................... 15

*King v. California,*
   784 F.2d 910 (9th Cir. 1986) ................................................................................. 13

*Klaassen v. Trustees of Indiana Univ.,*
   7 F.4th 592 (7th Cir. 2021) ................................................................................... 16

*Lindsey v. Claremont Middle Sch.,*
   No. C 12-02639 LB, 2012 WL 5988548 (N.D. Cal. Nov. 29, 2019) ................... 20

*Lockary v. Kayfetz,*
   587 F. Supp. 631 (N.D. Cal. 1984) ....................................................................... 17

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ................................................................................... 9

*Mason v. Gen. Brown Cent. Sch. Dist.,*
   851 F.2d 47 (2d Cir. 1988) ..................................................................................... 20

*McCutcheon v. Enlivant ES, LLC,*
   No. 5:21-cv-00393, 2021 WL 5234787 (S.D.W. Va. Nov. 9, 2021) ..................... 16

*Passarella v. Aspirus, Inc.,*
   2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) ..................................................... 21

*Payan v. Aramark Management Services Ltd. Partnership,*
   495 F.3d 1119 (9th Cir. 2007) ............................................................................... 19

*Peterson v. Hewlett-Packard Co.,*
   358 F.3d 599 (9th Cir. 2004) ................................................................................. 20

*Saxena v. Goffney,*
   159 Cal. App. 4th 316 (2008) ................................................................................. 13

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

*Scholar v. Pacific Bell,*
  963 F.2d 264 (9th Cir. 1992) ................................................................. 19

*Sever v. Alaska Pulp Corp.,*
  978 F.2d 1529 (9th Cir. 1992) ............................................................... 17

*Snider v Whitson,*
  184 Cal. App. 2d. 211 (1960) ................................................................ 14

*In re Terrazas,*
  73 Cal. App. 5th 960 (2022) .............................................................. 7, 14

*Tiano v. Dillard Dep't Stores, Inc.,*
  139 F.3d 679 (9th Cir. 1998) ................................................................. 20

*Voigt v. Savell,*
  70 F.3d 1552 (9th Cir. 1995) ................................................................. 17

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021) .................................................................. 16

*Wisconsin v. Yoder,*
  406 U.S. 205 (1972) ............................................................................. 20

**STATUTES**

42 U.S.C. §1985 ..................................................................................... *passim*

42 U.S.C. § 1985(3) ..................................................................... 17, 18, 19

42 U.S.C. § 2000e–5(f)(1) ................................................................ 19, 20

Civil Rights Act of 1964 Title VII ............................................................ 19

**OTHER AUTHORITIES**

CACI No. 530A ....................................................................................... 13

California Constitution ...................................................................... 13, 14

California Constitution, article I, section 1 ......................................... 8, 15

Rule 12(b)(6) .......................................................................................... 12

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT

FP 52072785.1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Having already filed four complaints, especially twice with his counsel's assistance, Plaintiff

4 Daniel B. Martin ("Plaintiff") still has not been able to state a plausible cause of action. The Third

5 Amended Complaint ("TAC") alleges two causes of action for (1) medical battery and (2) 42 U.S.C.

6 §1985: conspiracy against rights. While the TAC purportedly attempted to address the deficiencies in

7 the Second Amended Complaint ("SAC") by removing a cause of action for the duty of fair

8 representation and adding a new 42 U.S.C. § 1985 cause of action, the TAC, as pled, still presents the

9 same deficiencies, if not worse, identified in Matson's prior Motions, and it should be dismissed in its

10 entirety, with prejudice and without further leave to amend.

11

As an initial matter, the first cause of action for medical battery must be dismissed because

12 Plaintiff cannot plausibly allege a prima facie case for medical battery. To state a claim for medical

13 battery, Plaintiff must allege, among other things, that Defendant performed a medical procedure without

14 Plaintiff's consent or that Plaintiff consented to one medical procedure, but Defendant performed a

15 substantially different procedure. Even when the TAC is viewed in the most generous matter, Plaintiff

16 alleges that Matson, by implementing the COVID-19 Vaccination Policy, somehow committed a

17 medical battery because "Matson and MM&P [allegedly] conspired to exert coercive pressure upon

18 [Plaintiff] to accept unwanted medical treatment by threatening his livelihood." TAC, ¶ 42. Notably,

19 however, the TAC is completely silent as to whether Matson, a non-medical provider, performed a

20 medical procedure without Plaintiff's consent or that Matson performed a substantially different

21 procedure from that which Plaintiff consented to undergo, other than these conclusory allegations of

22 "coercive pressure." This is because Matson, a non-medical provider, cannot commit medical battery as

23 a matter of law.

24

Further, to the extent that the TAC relies on the case law (*In re Terrazas*, 73 Cal. App. 5th 960,

25 966-67 (2022)) to allege that Matson purportedly denied Plaintiff's "constitutional privacy right that

26 protects against receiving unwanted medical treatment" (TAC, ¶ 41), his reliance on that case is

27 misplaced because, unlike in *Terrazas* where an incapacitated inmate's constitutional right to privacy

28 was at issue because he could not provide informed consent, nothing in the TAC indicates that Plaintiff

lacks the capacity provide informed consent to the COVID-19 vaccines. Even assuming *arguendo* that Matson's implementation of the COVID-19 vaccination policy somehow triggered Plaintiff's right to privacy guaranteed by the California Constitution, article I, section 1 (it did not), the TAC has failed to allege that any such right was violated. On the contrary, the TAC makes clear that Plaintiff has indeed exercised his right not to take the COVID-19 vaccines even with the predictable result that his employment ended. See TAC, ¶ 29 ("Mr. Martin objected to his taking the COVID-19 vaccine.").

Moreover, Plaintiff's claims also fail because there is no fundamental right to refuse vaccination in the context of mandatory vaccination requirements, as case law makes clear. Moreover, to the extent Plaintiff relies on the theory that Matson exerted "coercive pressure upon [Plaintiff] to accept unwanted medical treatment by threatening his livelihood" (TAC, ¶ 34), this claim also fails as a matter of law because mandating vaccinations as a condition of employment is lawful.

Additionally, Plaintiff's *stylistically revised* second cause of action for 42 U.S.C. §1985: conspiracy against rights must be dismissed for failure to state a claim because the FAC has failed to allege (1) sufficient facts to support Plaintiff's conclusory allegation of the existence of a conspiracy; and (2) that Plaintiff was qualified as a member of a protected group because of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind" Matson and MM&P's imaginary conspiracy. In any event, section 1985(3) claim cannot survive because mandating vaccinations as a condition of employment is lawful.

Finally, to the extent the Court interprets Plaintiff as attempting to assert Title VII claims – based on the fact that all of Plaintiff's claims are solely premised upon his assertion that Matson allegedly violated Title VII when Matson was not able to accommodate his COVID-19 vaccine-related religious exemption request – the TAC should be dismissed because his Title VII Claims are time-barred and also because the TAC fails to plausibly allege a prima facie case.

Since the TAC, just like his original Complaint, the FAC, and the SAC, falls far short of stating a plausible claim for relief and any further amendment would be highly futile, Matson respectfully requests that the Court grant this Motion, with prejudice and without further leave to amend.

///

///

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 52072785.1

## II. <u>STATEMENT OF ISSUES TO BE DECIDED</u>

The issues raised by this Motion are:

(1) Whether Plaintiff's First Cause of Action for "Medical Battery" fails to state a claim upon which relief can be granted;

(2) Whether Plaintiff's Second Cause of Action for "42 U.S.C. §1985: Conspiracy Against Rights" fails to state a claim upon which relief can be granted;

(3) To the extent the Court interprets Plaintiff as attempting to assert a Title VII claim, whether such a claim should be dismissed because it is timed-barred;

(4) To the extent the Court interprets Plaintiff as attempting to assert a Title VII claim, whether such a claim fails because the TAC fails to plausibly allege a prima facie case; and

(5) Whether any further amendment would be futile, especially when the TAC is Plaintiff's fourth attempt to state a claim and was his second attempt after he retained counsel.

## III. <u>SUMMARY OF RELEVANT FACTS</u>[1]

The TAC avers that Matson is "an owner / operator of ocean-going U.S. flagged merchant vessels under contract with MM&P … a maritime union [whose] membership consists primarily of Deck Officers licensed by the United States Coast Guard." *See* TAC, ¶¶ 6, 7. According to the TAC, Plaintiff is "a United States Coast Guard- licensed Deck Officer and Member of the … [MM&P] …." *Id.* at ¶ 5. Plaintiff alleges that "[a]s a Deck Officer, [he] had established a relationship with Matson, deploying several times on merchant voyages on behalf of Matson [and] [h]e intended to work on Matson vessels in port and at sea with an assignment from MM&P Dispatch Hall." *Id.* at ¶¶ 8, 9. Plaintiff further contends that "[h]e was only one deployment away from retirement as of October 1, 2021, and was planning to deploy with Matson." *Id.* at ¶ 14.

The TAC further avers that on or around August 26, 2021, " [a] notice titled 'Memorandum of Understanding' … was posted at the MM&P dispatch hall at Oakland, California … [t]he practical effect of [which] was that [,] as of October 1, 2021, no Member could be dispatched to work on a vessel

---

[1] This is a mere summary of the allegations in the TAC, and Matson does not concede the truthfulness of the same. While Matson vigorously disputes these allegations, for purposes of this Motion only, it accepts the facts in the TAC as true and supplements them only with (1) publicly available documents and information of which the Court may take judicial notice and (2) the documents incorporated by reference into the TAC. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Intri-Plex Tech., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *see also* Request for Judicial Notice ("RJN"), concurrently filed herewith.

operated by Matson either in port or at sea unless the Member provided proof of having accepted a vaccination for COVID-19" and that "no Member could be dispatched to a Matson vessel in any capacity unless that Member had received one of three proffered vaccines for COVID-19." *Id.* at ¶¶ 16-18; *see also* Declaration of Danny Defanfi ("Defanti Decl."), ¶¶ 3, 4, Ex. A; RJN, ¶ 1. According to the TAC, on September 20, 2021, shortly before Matson's vaccination requirement went into effect, Plaintiff "objected to this requirement in a Notice / Demand dated September 20, 2021," on the following grounds: "[e]ach of the listed vaccines at the time were available to the public solely under Emergency Use Authorization (EUA) as investigational vaccines not licensed for any indication"; "[t]he listed vaccines were in fact investigational 'medical treatment'"; "Plaintiff asserted a religious right to refuse an EUA medical product / treatment." TAC, ¶ 19; Defanti Decl., ¶ 5, Ex. B; RJN, ¶ 2. Plaintiff further contends after receiving Plaintiff's September 20, 2021 letter, "Matson requested that [Plaintiff] submit a request for religious exemption." TAC, ¶ 20; Defanti Decl., ¶ 6, Ex. C; RJN, ¶ 2. The TAC further avers that Plaintiff "submitted a request for religious exemption." TAC, ¶ 21; Defanti Decl., ¶ 7, Ex. D; RJN, ¶ 2. Thereafter, Plaintiff was notified that Matson could not accommodate his religious exemption request. TAC, ¶ 22; Defanti Decl., ¶ 8, Ex. E; RJN, ¶ 2.

Based on the foregoing allegations, Plaintiff alleges that "[b]ecause of the MOU, [Plaintiff] was barred from working on a Matson vessel as he had in the past [and] this [allegedly] amounted to the loss of both a year's income and his planned retirement." TAC, ¶¶ 27, 28.

## IV.    PROCEDURAL HISTORY

In March 2022, Plaintiff filed an EEOC Charge, alleging Matson's purported Title VII violation with respect to the COVID-19 vaccination policy.[2] The Charge specifically alleges that: "[o]n or around September 2021, [he] was notified by [Matson] that effective October 1, 2021[,] all employees would be required to be vaccinated, unless the employee had a religious or medical exemption." *Id.* It further states, "I sincerely hold a religious belief … my religious exemption was denied by [Matson]." *Id.* Based on these allegations, Plaintiff alleges that he has been "discriminated against because of [his] religion … in violation of [his] rights as protected by Title VII …." *Id.* On February 13, 2023, the EEOC issued a

---

[2] RJN, ¶ 3, Ex. 1 (Plaintiff's EEOC Charge of Discrimination, and the Right-to-Sue Letter).

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1 right-to-sue notice. *Id.* Pursuant to this notice, Plaintiff was required to file a lawsuit within 90 days of

2 his receipt of the notice. *Id.* 221 days after the EEOC issued Plaintiff the Right-to-Sue notice, on

3 September 22, 2023, Plaintiff *belatedly* filed the original Complaint against Matson and MM&P,

4 alleging causes of action for (1) compelled consent, (2) denial of right to refuse an EUA medical product,

5 (3) denial of right to refuse medical treatment, and (4) tortious interference with contract. *See generally*

6 Compl. (Dkt. 1).

7      On November 21, 2023, Matson filed and served its Motion to Dismiss Plaintiff's Complaint.

8 (Dkt. 8). On December 12, 2023, in lieu of opposing Matson's Motion, Plaintiff responded by filing the

9 FAC. (Dkt. 23). The FAC reasserts largely non-cognizable six causes of action for (1) "No identified

10 duty on Plaintiff's part"; (2) "MM&P / Matson 'vaccine' requirements were arbitrary and capricious";

11 (3) "Wrongful termination – violation of right to refuse the proffered EUA medical products"; (4)

12 "Wrongful termination in violation of Plaintiff's right to refuse investigational / experimental medical

13 products"; (5) "Wrongful Termination - violation of right to refuse medical treatment, violation of right

14 not to participate in experimental research"; and (6) "Breach of Contract." *See generally id.*

15      On December 26, 2023, Matson filed and served its Motion to Dismiss Plaintiff's FAC. (Dkt.

16 30).  Matson's Motion was fully briefed and was set for hearing on December 30, 2024. *Id.* On January

17 29, 2024, on the eve of the Motion hearing, then *pro se* Plaintiff filed a request for 30 day delay in

18 decision stating that he was "in the process of retaining counsel." (Dkt. 39). On February 2, 2024, this

19 Court granted Plaintiff's request to delay for 30 days any decision on the pending motions to dismiss,

20 "in view of Plaintiff's representation that he [was] 'in the process of retaining counsel.'" (Dkt. 42). Per

21 the order, "[b]y March 4, 2024, Plaintiff [was] ordered to file a status update on whether counsel has

22 been retained in this action." *Id.*

23      On February 27, 2024, Plaintiff filed a status report stating that he was "still in the process of

24 attempting to obtain counsel [and he] does intend to seek leave to amend the [FAC] in a manner that

25 could defeat the Defendants' motion to dismiss." (Dkt. 45). On March 6, 2024, the Court further granted

26 Plaintiff's request for additional time to retain counsel and file a motion for leave to amend the FAC.

27 (Dkt. 46). Notably, the Court made it clear that "[c]onsidering this is Plaintiff's second extension of time,

28 Plaintiff shall file any such motion for leave to amend, counseled or not, by April 5, 2024." *Id.*

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT

FP 52072785.1

On April 5, 2024, Plaintiff, with new counsel of record, unilaterally filed the SAC in violation of the Court's March 6, 2024 order. (Dkt. 47). On April 16, 2024, Defendants filed a joint non-opposition to Plaintiff's filing of the SAC. (Dkt. 51). On the same date, the Court issued an order stating that "[h]aving construed Plaintiff's [SAC] as a motion for leave to amend, and considering Defendants' notice of non-opposition to the motion, the Court GRANTS Plaintiff's motion for leave to amend." (Dkt. 52). The order further directed Defendants to file their responsive pleading to the SAC (Dkt. 47) by May 7, 2024. *Id.* One day before Defendants' responsive pleading to the SAC was due, on May 6, 2024, Plaintiff filed a motion for leave to amend the SAC. (Dkt. 53). On May 7, 2024, Matson filed a Motion to Dismiss the SAC with prejudice and without leave to amend, given that the SAC has not adequately pled plausible claims for relief despite newly retaining counsel and having a third bite at the apple. (Dkt. 55). On May 20, 2024, Matson timely filed its opposition to Plaintiff's motion for leave to amend the SAC (Dkt. 57) and subsequently filed a reply brief supporting the Motion to Dismiss the SAC on May 28, 2024. (Dkt. 61).

Thereafter, upon Plaintiff's filing of an unopposed motion to continue the hearing on Defendants' Motions to Dismiss the SAC (Dkt. 62), the Court reset the Motion hearing for August 27, 2024. (Dkt. 63). Then, on August 15, 2024, the Court issued an order granting Plaintiff's motion for leave to amend the SAC and denying Defendants' Motions to Dismiss the SAC as moot. (Dkt. 65). The Court made clear that "given the number of times Plaintiff has amended his claims, the Court is unlikely to grant any further leave to amend if the claims do not survive a motion to dismiss." *Id.* On the same date, Plaintiff filed the TAC. (Dkt. 66).

Since the TAC has not adequately pled plausible claims for relief, Matson hereby moves to dismiss the TAC with prejudice and without leave to amend.

## V.    **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1023 (C.D. Cal. 1998). Dismissal under the rule may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss also is proper where, as here, a plaintiff seeks remedies to

1  which he is not entitled as a matter of law. *See, e.g., King v. California*, 784 F.2d 910 (9th Cir. 1986).

2  While *pro se* complaints are held to less rigorous standards than formal pleadings by lawyers, the courts

3  are empowered, nevertheless, to dismiss *pro se* complaints where the plaintiff fails to state a claim and

4  where it appears beyond doubt that the plaintiff cannot prove facts to support a claim that would entitle

5  him to relief. *Haddock v. Board of Dental Examiners*, 777 F 2d 462 (9th Cir. 1985).

## VI.   LEGAL ARGUMENT

### A.   Plaintiff's First Cause of Action for "Medical Battery" Should be Dismissed Because it Fails to State a Plausible Claim Upon Which Relief can be Granted.

As an initial matter, the first cause of action for medical battery must be dismissed for failure to state a claim upon which relief can be granted because (1) Plaintiff cannot plausibly allege a prima facie case for medical battery; (2) Plaintiff's reliance on the California Constitution is unavailing; and (3) mandating vaccinations as a condition of employment is lawful.

#### 1.   Plaintiff Cannot Plausibly Allege a Prima Facie Case for Medical Battery.

To state a claim for medical battery, Plaintiff must allege: (1) that *Matson performed a medical procedure without Plaintiff's consent*, or, that Plaintiff consented to one medical procedure, but Matson performed a substantially different procedure, (2) that Plaintiff was harmed, and (3) that Matson's conduct was a substantial factor in causing Plaintiff harm. *See* CACI No. 530A. Medical Battery; *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (2008) (noting that "a battery is an intentional tort that occurs *when a doctor performs a procedure without obtaining any consent*") (emphasis added); *see also Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 107 Cal. App. 4th 1260, 1266-67 (2003) ("A battery is an intentional and offensive touching of a person who has not consented to the touching" and "[i]t is well settled that a physician who performs a medical procedure without the patient's consent commits a [medical] battery irrespective of the skill or care used.").

Here, Plaintiff has clearly failed to plead any of these elements to support his first cause of action for medical battery. The allegations contained in Plaintiff's first cause of action for medical battery are completely silent as to any medical procedure being performed by Matson, a non-medical provider. When the TAC is viewed in the most generous matter, it appears to allege that Matson, by simply implementing the COVID-19 Vaccination Policy, somehow committed a medical battery because

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

"Matson and MM&P [allegedly] *conspired to exert coercive pressure upon [Plaintiff] to accept unwanted medical treatment by threatening his livelihood*." TAC, ¶ 42 (emphasis added). However, there are no other facts in the TAC or in the first cause of action for medical battery supporting the fact that Matson performed a medical procedure without Plaintiff's consent or that Matson performed a substantially different procedure from that which Plaintiff consented to undergo, other than these conclusory allegations of "coercive pressure." *See Snider v Whitson*, 184 Cal. App. 2d. 211, 214-215 (1960) (when pleading medical battery, Plaintiff is held to a greater degree of specificity, requiring a recitation of specific facts upon which the allegation is based). Simply put, Plaintiff cannot establish that there was a medical procedure at issue that Matson, a non-medical provider, performed to touch Plaintiff intentionally and offensively, e.g., by injecting a COVID-19 vaccine without Plaintiff's consent. Accordingly, the first cause of action for medical battery must be dismissed for failure to state a claim.

## 2. Plaintiff's Reliance of the California Constitution to Argue the Alleged Violation of his Right to Refuse Medical Treatment is Unavailing.

Plaintiff's medical battery claim also appears to allege that Matson denied Plaintiff's "constitutional privacy right that protects against receiving unwanted medical treatment." TAC, ¶ 41. In arguing so, Plaintiff cites *In re Terrazas*, 73 Cal. App. 5th 960, 966-67 (2022), but his reliance on that case is misplaced because that case involves electroshock therapy (ECT) for a California prisoner who cannot provide informed consent before ECT is performed on him due to a history of mental health. The inmate in *Terrazas* was being held at the California Institute for Men on April 13, 2021 when the acting warden petitioned a state superior court for authorization to perform ECT on him. *Id.* at 965-966. Terrazas, who was convicted of first-degree murder at age 17, was by then a 44-year-old suffering "schizoaffective disorder, bipolar type," according to a prison psychiatrist. *Id.* at 965. Following the warden's petition, the trial court held a hearing, where Terrazas's counsel argued that Terrazas could not provide informed consent and disputed whether ECT would be beneficial. *Id.* at 966. The trial court agreed that the State could not show that Terrazas had the capacity to provide informed consent. *Id.* But it found that the State "had proven by clear and convincing evidence" that (a) there was "a compelling interest justifying the use of ECT" on Terrazas; (b) there were "no less-onerous alternatives for him"; and (c) that ECT is "a sound medical and psychiatric practice." *Id.* Terrazas' counsel then filed for a writ

of habeas corpus, and the Court of Appeal agreed to stay his ECT while it reviewed the petition. *Id.* Notably, in that appeal, Terrazas did not challenge the trial court's findings. *Id.* Rather, he brought a claim under the right-to-privacy guarantee found in Article I, § 1 of the state Constitution, arguing for the "appointment of a surrogate decision maker to determine if [ECT] is medically necessary and consistent with [Terrazas'] expressed wishes or best interest." *Id.* The court, however, held that the "constitutional right does not require the appointment of a surrogate decision maker for an incompetent prison inmate." After noting that "[f]or almost all medical treatments involving prison inmates in California, it is already the case that the inmate's wishes while competent are considered," the court held that "if the inmate later lacks capacity," the State is required to consider "the inmate's personal values and wishes, if known … before the state imposes invasive medical treatment on an inmate who lacks the capacity to give informed consent." *Id.* at 969. In short, in granting the writ of habeas corpus, the court found that the incapacitated inmate's constitutional right to privacy encompassed the right of the trial court to ensure, if possible, that the imposition of ECT was consistent with his best wishes. *Id.* at 971.

Here, unlike in *Terrazas*, nothing in the TAC indicates that Plaintiff lacks the capacity to provide informed consent to the COVID-19 vaccines. Rather, the TAC *expressly* alleges that "a COVID-19 vaccine" is something that "he did not want" (TAC, ¶ 33). Further, even assuming *arguendo* that Matson's implementation of the COVID-19 vaccination policy triggered Plaintiff's right to privacy guaranteed by the California Constitution, Article I, Section 1 (it did not), the TAC fails to plausibly allege that any such right was violated because the TAC makes clear that Plaintiff has indeed exercised his right to not take the COVID-19 vaccines, although with the predictable result that his employment ended. *See generally* TAC.

More importantly, Plaintiff's claims fail as a matter of law because neither "right to refuse medical treatment" nor "freedom to choose to reject, or refuse to consent to, intrusion of his bodily integrity" (TAC, ¶ 41), is a recognized fundamental right *in the context of mandatory vaccination requirements*. Over a century ago, the U.S. Supreme Court recognized that mandatory vaccination requirements, like Matson's, do not implicate an individual's fundamental right. *See, e.g., Jacobson v. Massachusetts*, 197 U.S. 11, 32-33 (1905) (listing cases). Relying on *Jacobson*, many lower courts have repeatedly held that there is no right to refuse vaccination. *See Burcham v. City of Los Angeles*, 562

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

F.Supp.3d 694, 706 (2022) (holding that "there has never been a fundamental right to refuse vaccination"); *America's Frontline Doctors v. Wilcox*, No. EDCV 21-1243 JGB (KKx), 2022 WL 1514038, at *8 (C.D. Cal. May 5, 2022) (rejecting plaintiffs' arguments that the vaccine mandate violated the right to reject medical treatment and noting that "Plaintiffs fail to establish that the Policy implicates a fundamental right"); *Health Freedom Defense Fund v. Reilly*, CV 21-8688 DSF (PVCx), 2022 WL 5442479, at *5 (C.D. Cal. Sept. 2, 2022) (same); *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Given Jacobson [citation] …, there can't be a constitutional problem with vaccination against SARS-CoV-2."). As these cases undoubtedly demonstrate, there is no fundamental right to refuse vaccination in the context of mandatory vaccination requirements.

### 3.    Mandating Vaccinations as a Condition of Employment is Lawful.

Moreover, Plaintiff's theory that Matson somehow exerted "coercive pressure upon [Plaintiff] to accept unwanted medical treatment by threatening his livelihood" (TAC, ¶ 42) also fails because mandating vaccinations as a condition of employment is lawful. COVID-19 vaccination policies similar to Matson's vaccination policy have been addressed by many courts over the last three years and similar legal arguments have been consistently rejected.

For example, in *Burcham*, a Central District case, the City's vaccination policy, like here, allowed employees to apply for religious or medical exemptions. *Burcham*, 562 F.Supp.3d at 699. After noting that the mandatory vaccination policy did not force Plaintiffs to get vaccinated, did not amount to "coercion," and did not violate Plaintiffs' constitutional rights, the Court granted the City's motion and dismissed the complaint. *Id.*, at 707 n.4, 708. Other courts have drawn similar conclusions. *See Beckerich v. St. Elizabeth Med. Ctr.*, 563 F.Supp.3d 633, 644 (2021) ("[N]o Plaintiff in this case is being forcibly vaccinated … no Plaintiff is being imprisoned and vaccinated against his or her will … Rather, these Plaintiffs are choosing whether to comply with a condition of employment or to deal with the potential consequences of that choice"); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (holding that making vaccination a condition of employment does not come close to the level of coercion necessary to infringe a liberty interest in avoiding forcible medical treatment); *McCutcheon v. Enlivant ES, LLC*, No. 5:21-cv-00393, 2021 WL 5234787, at *3 (S.D.W. Va. Nov. 9, 2021) (dismissing Plaintiff's similar claims noting that "[plaintiff] is free to accept or refuse the COVID-19 vaccine. If she refuses,

she need only to pursue employment elsewhere").

**B.**    **Plaintiff's Second Cause of Action for "42 U.S.C. § 1985: Conspiracy Against Rights" Cannot Survive Dismissal.**

Plaintiff adds a new theory of liability, e.g., 42 U.S.C. § 1985: Conspiracy Against Rights, to the TAC in a purported attempt to cure the deficiencies identified in the SAC. However, adding this new cause of action does not change the conclusion that Plaintiff's TAC is subject to dismissal because the TAC fails to plausibly allege a prima facie case for the 42 U.S.C. § 1985 claim.

"To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts to support (1) the existence of a conspiracy, (2) to deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971). In addition, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make the requisite showing of class-based animus "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987); *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995); *Behringer v. Cal. Polytechnic State Univ.*, Case No. 5:23-cv-00934-JFW (SK), 2023 WL 6811813 (C.D. Cal. Sept. 15, 2023). In other words, Plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Here, Plaintiff's claim under 42 U.S.C. § 1985 fails for two reasons.

First, the TAC fails to allege sufficient facts to support Plaintiff's conclusory allegation of the existence of a conspiracy. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that "[b]ecause appellant failed to allege any facts showing … invidious" discrimination on the part of defendants, "the district court was … correct in dismissing the § 1985(3) claim"); *see also Lockary v. Kayfetz*, 587 F. Supp. 631, 639 (N.D. Cal. 1984) (holding that "[a]llegations of conspiracies must be supported by material facts, not merely conclusory statements"). In adding a new cause of action under

1   42 U.S.C. § 1985, the TAC avers, in wholly conclusory fashion, that "Matson and MM&P conspired to
2   deprive [Plaintiff] of the right to the enjoyment of his profession, and of the compensation available to
3   him for the exercise of his profession because he was unvaccinated against COVID-19 and / or because
4   he held religious beliefs against COVID-19, without any genuine health justification for its actions."
5   TAC, ¶ 44. But in any event, there is no other factual allegations to support the assertion that Matson
6   and MM&P acted in concert, rather than individually, in responding to Plaintiff's religious exemption
7   request.

8       Second, Plaintiff's section 1985(3) claim also cannot survive dismissal because he has failed to
9   allege that there were some racial or other class-based, invidiously discriminatory animus behind Matson
10  and MM&P's purported conspiracy. *Gerritsen*, 819 F.2d at 1519; *Behringer*, 2023 WL 6811813, at *6.
11  The *Behringer* case is instructive and directly on point in this regard. In *Behringer*, a former student who
12  was barred from attending class in person after refusing to comply with COVID-19 regulations sued the
13  university and local health authorities. *Behringer*, 2023 WL 6811813, at *1. In his fifth cause of action,
14  plaintiff alleges, just like here, that "defendants engaged in a conspiracy under 42 U.S.C. § 1985(3) ...."
15  *Id.* at 6. In granting defendant's motion to dismiss, after noting that "to state a claim under § 1985(3),
16  plaintiff must allege that he was denied equal protection because of 'some racial, or perhaps otherwise
17  class-based, invidiously discriminatory animus behind the conspirators' action (internal citation
18  omitted)," the Central District held that "[plaintiff] has no basis to sue under § 1985(3) [because] <u>being</u>
19  <u>among citizens still rankled by past Covid-19 measures … neither implicates even a quasi-suspect</u>
20  <u>classification nor qualifies as membership in a congressionally protected group</u>." *Id.*(emphasis added).

21      Here, while the TAC avers, in conclusory fashion, that "it is clear that the only justification
22  remaining for their actions are animus for those who remained unvaccinated against COVID-19 and / or
23  those who held religious beliefs against COVID-19 vaccination" (TAC, ¶ 45), Plaintiff has failed to
24  allege any additional facts to show any purported animus. Since the TAC has failed to plausibly allege
25  that Plaintiff was qualified as a member of a protected group because of "some racial, or perhaps
26  otherwise class-based, invidiously discriminatory animus behind the conspirators' action," his section
27  1985(3) claim cannot survive dismissal. Moreover, Plaintiff's section 1985(3) claim cannot survive in
28  any event because mandating vaccinations as a condition of employment is lawful, as discussed above.

**C.**    <u>**To the Extent the Court Interprets Plaintiff as Attempting to Assert a Title VII**</u> <u>**Claim, it Fails as a Matter of law.**</u>

While the TAC does not explicitly reference Title VII of the Civil Rights Act of 1964 ("Title VII"), it is undisputed that Plaintiff's claims set forth therein arise out of Matson's implementation of the COVID-19 vaccination policy. *See, e.g.*, TAC ¶ 16 ("Matson … instituted a Requirement effective October 1, 2021, that no Member could be dispatched to a Matson vessel in any capacity unless that Member had received one of three proffered vaccines for COVID-19"); ¶ 15 ("Mr. Martin submitted a request for religious exemption"); and ¶ 21 ("Matson rejected the request without explanation"). In that regard, Plaintiff's entire claims, regardless of how they were stylistically labeled in the TAC, are solely premised upon his assertion that Matson allegedly violated Title VII when Matson was not able to accommodate his COVID-19 vaccine-related religious exemption request. To the extent the Court interprets Plaintiff as attempting to assert a Title VII claim, the TAC should be dismissed because (1) his Title VII claim is time-barred, and (2) the TAC fails to plausibly allege a prima facie case.

**1.**    <u>**Plaintiff's Purported Title VII Claims are Time-Barred.**</u>

When the EEOC closes its charge and issues a right-to-sue letter, it provides the charging party with a notification that "within ninety days after [receiving a right-to-sue letter] a civil action may be brought against the respondent …." 42 U.S.C. § 2000e–5(f)(1). Since this 90-day filing requirement constitutes a statute of limitations, Plaintiff's claims are time-barred if he fails to file a lawsuit within the 90-day period. *Scholar v. Pacific Bell*, 963 F.2d 264, 266-267 (9th Cir. 1992).

Here, to the extent that the Court interprets Plaintiff as attempting to assert Title VII claims on the ground that Plaintiff's TAC is predicated on his Title VII claims, the Court should dismiss such claims because Plaintiff failed to file his Complaint within this 90-day period. Since the EEOC issued Plaintiff a right-to-sue letter on or around February 13, 2023,[3] Plaintiff had 90 days to file this lawsuit. Id.; 42 U.S.C. § 2000e–5(f)(1); *Scholar*, 963 F.2d at 266-267. Assuming that Plaintiff received the letter 3 days after the issuance, he was required to file the Complaint by May 17, 2023. *See Payan v. Aramark Management Services Ltd. Partnership*, 495 F.3d 1119, 1125-25 (9th Cir. 2007) (rebuttable presumption

---

[3] RJN, ¶ 3 (EEOC's Right-to-Sue Letter).

1  exists that right-to-sue letter was received within 3 days of its mailing). Plaintiff did not timely file his

2  Complaint; he waited until September 22, 2023, 221 days after the EEOC issued the letter, to file his

3  Complaint. (Dkt. 1). Accordingly, to the extent this Court interprets the TAC as attempting to assert Title

4  VII claims, the TAC should be dismissed in its entirety as his purported Title VII claims are time-barred.

5  **2.     Plaintiff's Title VII Claim Should Also be Dismissed Because the TAC Fails**

6  **to Plausibly Allege a Prima Facie Case.**

7       To state a plausible failure-to-accommodate claim under Title VII, Plaintiff must plead that (1)

8  he had a sincerely held religious belief that conflicted with an employment duty; (2) he informed his

9  employer of the religious belief and conflict, and (2) the employer subjected him to an adverse

10  employment action because of his inability to fulfill the job requirements. *See Peterson v. Hewlett-*

11  *Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citing *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1438 (9th

12  Cir.1993)). To do so, Plaintiff must plausibly allege that his beliefs are grounded in religious beliefs, not

13  secular concerns. *See Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972); *Tiano v. Dillard Dep't Stores,*

14  *Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences"); *see also Mason*

15  *v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) ("[a]n individual's assertion that the belief

16  [is religious does not] automatically mean that the belief is religious ... a threshold inquiry into the

17  religious aspect of particular beliefs and practices cannot be avoided if we are to determine what is in

18  fact based on religious belief, and what is based on secular or scientific principles") (collecting cases).

19       Here, the TAC does not plausibly allege a prima facie case for Plaintiff's purported Title VII

20  claim because it is completely devoid of any facts to show that Plaintiff had a sincerely held religious

21  belief that conflicted with an employment duty. Specifically, it fails to allege what religion Plaintiff

22  practices, what beliefs he holds, and *most importantly, how those beliefs conflict with Matson's COVID-*

23  *19 vaccine policy*. *See Lindsey v. Claremont Middle Sch.*, No. C 12-02639 LB, 2012 WL 5988548, at *2

24  (N.D. Cal. Nov. 29, 2019) (dismissing a plaintiff's Title VII failure-to-accommodate claim in part

25  because it was unclear, "for instance, what religion [the plaintiff] practices, or how any of Defendants'

26  conduct affects that practice."). Furthermore, the TAC fails to plausibly allege that Plaintiff's stated

27  objections are rooted in religious concerns. Rather, Plaintiff's objections that the COVID-19 vaccines

28  are "investigational vaccines not licensed for any indication" (TAC, ¶ 19.a.), "investigational 'medical

treatments'" (TAC, ¶ 19.b.), "unwanted medical treatment" (TAC, ¶¶ 31-34, 41-42), intrusions of his "bodily integrity" (TAC, ¶¶ 30, 32-34, 41) or that "none of the vaccines prevented transmission of COVID-19 at the time they instituted the MOU" (TAC, ¶ 38) are unprotected secular beliefs.

Courts have held that an employee's religious exemption request can be denied on the grounds that the employee's belief is not truly religious in nature. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) ("an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the grounds that the employee's belief is not truly religious in nature"); *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (plaintiffs' claims must originate from religious beliefs rather than purely secular philosophical concerns); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (dismissing religious accommodation claims under Title VII related to the COVID-19 vaccine mandate and finding plaintiff's purported beliefs related to "free will" were not religious); *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *2-7 (W.D. Wis. Mar. 10, 2023) (exemption requests "predicated fundamentally on [] concerns with the safety of the vaccine and [plaintiffs'] right to bodily integrity"). Consistent with the decisions of numerous courts considering similar objections, Plaintiff's purported Title VII claim should be dismissed because the TAC, as pled, does not plausibly allege his purported sincerely held religious beliefs that conflicted with Matson's policy, other than his blanket objections purely based on secular principle.

**D.    Plaintiff Should not be Afforded Additional Leave to Amend Again as Further Amendment Would Be Highly Futile.**

The "court may deny leave to amend where amendment would be futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002). Here, any further amendment would be futile, especially given the following. First, as fully discussed above, the TAC cannot plausibly state a claim for the two causes of action as a matter of law. Moreover, the facts that the TAC is Plaintiff's fourth attempt, and it was *his counsel's second attempt* further demonstrates that additional amendment would be futile. Accordingly, as the Court recognized, "given the number of times Plaintiff has amended his claims," the Court should dismiss Plaintiff's TAC with prejudice. *See Calhoun v. VA MC San Diego*, No. 08-cv-2064, 2009 WL 1227891, at *1 (S.D. Cal. May 5, 2009) (dismissing without leave to amend after concluding "there appears to be no circumstances under which Plaintiff can plausibly state a

claim"); *Beusgens v. Galloway*, No. 07-cv-43, 2007 WL 1674097, at *2 (D. Or. June 7, 2007) (dismissing without leave to amend after affording the pro se plaintiff "the benefit of any doubt" but concluding that he could not remedy the deficiencies in his complaint through amendment); *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012) (holding plaintiffs are not entitled to amend a deficient complaint a third time when "amendment would be futile").

## VII.    **CONCLUSION**

For all of the foregoing reasons, Matson respectfully requests that the Court grant this Motion in its entirety to dismiss Plaintiff's TAC, with prejudice and without leave to amend.

DATE: August 29, 2024                    FISHER & PHILLIPS LLP

By:    /s/Jason A. Geller
      _____
      Jason A. Geller
      Hyunki (John) Jung
      Attorneys for Defendant
      Matson Navigation Company, Inc. (*erroneously named as* Matson Navigation Co.)

DEFENDANT MATSON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

FP 52072785.1