E. Scott Lloyd (Pro Hac Vice)
Virginia Bar # 76989
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
Tel. (540) 823-1110
email: scott@lloydlg.com

Jennifer W. Kennedy (Local Counsel)
California Bar # 185406
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025-7076
(626) 888-2263
Email: jenniferkennedyesq@gmail.com

Attorneys for Plaintiff, DANIEL B. MARTIN,

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANSICO DIVISION**

| | |
|---|---|
| DANIEL B. MARTIN,<br><br>Plaintiff,<br><br>vs.<br><br>MASTERS, MATES, & PILOTS<br><br>and<br><br>MATSON NAVIGATION CO.,<br><br>Defendants. | Case No. 3:23-cv-04859-RFL<br><br>**RESPONSE TO DEFENDANT MATSON NAVIGATION CO.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. Rita F. Lin<br>Date: November 5, 2024<br>Time: 10 a.m.<br>Crtrm.: 15 |

**PLAINTIFFS RESPONSE TO DEFENDANT MATSON NAVIGATION CO.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff DANIEL B. MARTIN, ("Plaintiff"), by and through his attorney, submits this response to International Organization of Matson Navigation Company's ("Matson's") motion to dismiss.

## I. RELEVANT FACTUAL BACKGROUND

As a Deck Officer, Mr. Martin had established a relationship with Matson, deploying several times on merchant voyages. TAC at ¶8. He was only one deployment away from retirement as of October 1, 2021, and was planning to deploy with Matson. *Id* at 14.

Matson, along with Mr. Martin's union, Masters, Mates, & Pilots (MM&P), instituted a Requirement effective October 1, 2021, that no Member could be dispatched to a Matson vessel in any capacity unless that Member had received one of three proffered vaccines for COVID-19. *Id* at 16.

The practical effect of this Memorandum of Understanding was that, as of October 1, 2021, no Member could be dispatched to work on a vessel operated by Matson either in port or at sea unless the Member provided proof of having accepted a vaccination for COVID-19. *Id* at 18.

Mr. Martin objected to this requirement in multiple communications to both Matson and MM&P and went on to request a grievance hearing with MM&P, which it denied. *Id* at 19-25. Mr. Martin was barred from working on a Matson vessel as he had done in the past, despite personnel with different responsibilities working in the vicinity having no vaccination requirement. This lost opportunity amounted to the loss of both a year's income and his planned retirement. *Id* at 27-28, 35.

## II. LEGAL STANDARD

Plaintiff agrees with Defendant that a motion to dismiss pursuant to Rule 12(b)(6) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level," and "formulaic recitation of the elements of a cause of action" will not satisfy this requirement. *Twombly*, 550 U.S. at 555. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim," *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996), and even a liberal interpretation of a claim may not "supply essential elements of the claim," *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Dismissal is therefore appropriate where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984)).

**Lloyd Law Group, PLLC**
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

## ARGUMENT

### A. Mr. Martin has Alleged a Plausible Claim of Medical Battery

Mr. Martin has alleged medical battery against Matson—that it exerted coercive pressure to accept unwanted medical treatment, and that this coercive pressure is enough to violate the prohibition against medical battery, in the same way that sexual harassment is enough to violate the prohibition against sex discrimination.

As stated in Mr. Martin's complaint, "Californians have a constitutional privacy right that protects against receiving unwanted medical treatment." *In re Terrazas*, 73 Cal. App. 5th 960, 966-67, 288 Cal. Rptr. 3d 801, 805 (2022)(citations omitted). According to this right, "a competent adult has the right to refuse medical treatment, even treatment necessary to sustain life." *Id.* Rooted in both the California Constitution and the common law, this right "guarantees to the individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity." *Id. See also*, *Cobbs v. Grant*, 8 Cal. 3d 229, 242 (Sup. Ct. Ca. 1972)("A person of

adult years and in sound mind has the right, in the exercise of control over his own body, to determine whether or not to submit to lawful medical treatment.")

Medical battery occurs when circumstances meet three conditions: (1) that a party performed a medical procedure without Plaintiff's consent […] (2) that the Plaintiff was harmed, and (3) that the defendant's conduct was a substantial factor in causing Plaintiff harm. CACI No. 530A. Medical Battery; *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (2008); *Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 107 Cal. App. 4th 1260, 1266-67 (2003)("A battery is an intentional and offensive touching of a person who has not consented to the touching" and "[i]t is well settled that a physician who performs a medical procedure without the patient's consent commits a [medical] battery irrespective of the skill or care used.").

Mr. Martin has met the second two elements. Matson excluded him from employment, and Matson was a substantial factor in that harm—it was the entity that did the excluding. As for the first element, Mr. Martin acknowledges that Matson did not hold him down and perform a medical procedure on him. What Matson *did* do, however, is exert coercive pressure on Mr. Martin's right to refuse medical treatment by threatening his livelihood. Such coercion, as it involves unwanted bodily touching, is analogous, if not directly related, to sexual harassment, where defendants are not able to plead innocence simply because no physical touching occurred. Instead, in sexual harassment, as it must be here, it is the coercion itself that constitutes the offense.

In 1977, the case of *Barnes v. Costle* solidified the legal convention that, in addition to direct discrimination, sexual harassment is also discrimination on the basis of sex and carries with it legal consequences. 561 F.2d 983 (D.C. Cir. 1977).[1] It is appropriate here for this Court

[1] Before *Barnes v. Costle*, courts treated sexual harassment as "a personal matter having nothing to do with work or a sexual assault that just happened to occur at work." Reva B. Siegel, A Short History of Sexual Harassment, in DIRECTIONS IN SEXUAL HARASSMENT LAW 11, (Catherine McKinnon, ed. 2003). [T]he American legal system," before 1977 "offered women scant protection from sexual coercion at work […] most free women sexually coerced at work would have little reason to expect the state to sanction the men who took advantage of them." New York's high court in 1874, for example, rejected a rape conviction of a man who assaulted his fourteen-year-old servant girl, after locking her younger siblings in his barn. *Id*. Legal and social advances, including women's suffrage, gradually began to change this balance.

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

to recognize that the precedent prohibiting coercion in the context of sex discrimination also provides the framework for courts to recognize that coercion in the pursuit of unwanted medical battery is unlawful as well.

This is especially so in the context of developments in the context of informed consent. The Belmont Report, for example, arose out of an American medical and research culture that had seen both forced sterilizations and the Tuskegee medical experiments on African Americans. The report states:

> Coercion occurs when an overt threat of harm is intentionally presented by one person to another in order to obtain compliance...Unjustifiable pressures usually occur when persons of authority or commanding influence--especially where possible sanctions are involved-- urge a course of action for a subject. Undue influence, by contrast, occurs through an offer of an excessive, unwarranted, inappropriate or improper reward or other overture in order to obtain compliance. Also, inducements that would ordinarily be acceptable may become undue influences if the subject is especially vulnerable. HHS.gov, The Belmont Report, at at https://www.hhs.gov/ohrp/regulations-and-policy/belmontreport/index.html

The American Medical Association Code of Medical Ethics Opinion 2.1.1 articulates a similar approach: "Informed consent to medical treatment is fundamental in both ethics and law. Patients have the right to receive information and ask questions about recommended treatments so that they can make well-considered decisions about care. Successful communication in the patient-physician relationship fosters trust and supports shared decision making." (available at: https://code-medical-ethics.ama-assn.org/sites/default/files/2022-08/2.1.1%20Informed%20consent%20--%20background%20reports.pdf).

Defendants cite in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), where the Supreme Court found that a state may create conditions for a vaccine mandate. This precedent however, has received the caution that it is a "modest decision" that should not be read to "overshadow the Constitution during a pandemic." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63,70 (2020)(Gorsuch, J., concurring). Furthermore, this is a decision that should be read to apply a rational basis review to such a mandate.

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

Here, there was no rational basis, as it was widely acknowledged at the time that the vaccine did not prevent the disease or transmission of the disease.[2] Furthermore, there were other groups on the ship and at port who worked in close proximity to Deck Officers, but did not have the same requirement.

Mr. Martin, in experiencing coercion in pursuit of battery, has experienced an offence against his rights as articulated in the California Constitution and the common law. Matson in pursuit of these in appropriate ends has committed an offense against Mr. Martin's rights—it has threatened his livelihood in the hopes that it would induce him to go against his better judgment or they would end his employment with Matson.

**B. Section 1985 provides protection for Mr. Martin in this Context**

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

To bring a cause of action successfully under 42 U.S.C. § 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
>
> *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29, 77 L. Ed. 2d 1049 , 103 S. Ct. 3352 (1983).

---

[2] Holcombe and Maxouris, *CDC head says COVID-19 vaccines prevent severe illness and death, but they can't prevent transmission,* CNN.COM, (August 16, 2021), at https://www.cnn.com/us/live-news/coronaviruspandemic-vaccine-updates-08-06-21/h_61de1502e86060f5faf4477339928e33. See also, Singanayagam, Ankia, PhD, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study, The Lancet, Infectious Diseases*, October 29, 2021, https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext (British study finding that "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts").

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

All of these elements are satisfied here—there was agreement between Masters, Mates, & Pilots and Matson to fire people willing, able, and entitled to work on Matson ships if they were unvaccinated against COVID-19. They fired Mr. Martin, and he was deprived of his right to work and pursue his profession.

The Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) clarified regarding 42 U.S.C. §1985, that "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

Courts have expanded that protection to groups of individuals who have not enjoyed heightened scrutiny under the Supreme Court's Equal Protection analysis.[3] The analysis is whether the group experiencing discrimination is a class, whether there is discriminatory animus, and whether the deprivation is of rights secured in the law to all.

Here, the class in question is the unvaccinated, with a subclass of those with religious beliefs against the unvaccinated. Mr. Martin is part of both groups, but acknowledges the protections afforded under Title VII of the Civil Rights Act for religious believers in the employment context, so he focuses on the class of unvaccinated.

While it is true that the Central District of California has ruled that a group of individuals objecting to the COVID-19 mitigation measures, including both vaccination and other measures not at issue here, are not a class for purposes of §1985, no binding authority prevents this Court from so finding.

Such a finding would accord with the purpose of §1985. In *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1537 (9th Cir. 1992), the Ninth Circuit acknowledged that women purchasers of disability insurance who alleged that insurance was sold to them at discriminatory rates are a

[3] *Musko v. McClandless*, 1995 U.S. Dist. LEXIS 5911 (E.D. Pa. 1995), and *Trautz v. Weisman*, 819 F. Supp. 282 (S.D. N.Y. 1993) have acknowledged protections for the disabled under §1985.

class under §1985(c), because it is "well established that gender-based classifications may result in invidious discrimination." *Id* (citing *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 505 & n.16 (9th Cir. 1979)).

The reality post-COVID is that the same may be said of those who are unvaccinated against COVID-19. These individuals were singled out not only for loss of employment, education, and schooling, they were also subject to public shaming, scapegoating, death wishes, and personal harassment. Although much of this was couched in concern over public health, Plaintiff thinks it uncontroversial to assert that often the opposition the unvaccinated felt went far beyond concern over public health and deeply into the realm of invidiousness.[4]

In this case, the invidiousness may be identified by the lack of any genuine public health

[4] Bor et al., *Discriminatory attitudes against unvaccinated people during the pandemic*, 613 NATURE 704-711 (2023)("Our results reveal that vaccinated respondents (n = 54,054) exhibit exclusionary attitudes towards unvaccinated individuals. On average, vaccinated respondents were 13 percentage points more unhappy when presented with an unvaccinated versus fully vaccinated target. Country-level estimates range from 1 to 36 percentage points."); Sharif Amlani and Spencer Kiesel, *How much do vaccinated Americans dislike the unvaccinated? We measured.* WASHINGTON POST (January 27, 2022) at https://www.washingtonpost.com/politics/2022/01/27/vaxxed-anger-pandemic-public-opinion/. ("Second, most vaccinated individuals dislike the unvaccinated. They most commonly characterize these individuals as "stupid," "selfish," "ignorant," "dumb," "unsafe" and "foolish." A majority of vaccinated people, fully 58 percent, report that their word conveys a negative sentiment."); Mary Van Beusekom, *COVID-vaccinated disdain unvaccinated, multi-country surveys find*, CENTER FOR INFECTIOUS DISEASE RESEARCH AND POLICY (December 9, 2022) at https://www.cidrap.umn.edu/covid-19/covid-vaccinated-disdain-unvaccinated-multi-country-surveys-find ("Vaccinated respondents had greater antipathy toward their unvaccinated peers (16 percentage points) and were also 28 percentage points less likely to respect their freedom of movement, 10 percentage points less likely to respect their freedom of residence, 8 percentage points less likely to support their application for citizenship, and 7 percentage points less likely both to respect their freedom of speech and support their application for welfare benefits.").

Lloyd Law Group, PLLC
15 Chester Street
FRONT ROYAL, VA 22630
(540) 823-1110

justification for the mandate as applied. While Matson claims that it was over concern for public health, the reality is that other members of Matson's operations, operating in close proximity, were not subject to the same requirement. Furthermore, the vaccinated could also catch and spread COVID-19, and this was known publicly at the time.

## III. CONCLUSION

Coercion to accept unwanted medical treatment is a form of medical battery in the same way that coercion to engage in unwanted romantic advances is a form of sexual discrimination. The unvaccinated—a group that experiences invidiousness, malice, and discrimination, is a class for the purpose of 42 U.S.C. 1985; Matson and MM&P conspired against the rights of the unvaccinated in a malicious fashion, Mr. Martin among them. For these those reasons and others stated above, this Court should deny Matson's motion to dismiss Mr. Martin's claims of medical battery and conspiracy against rights under 42 U.S.C. § 1985.

Dated: September 19, 2024

By: __/s/ E. Scott Lloyd______________
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
Tel. (540) 823-1110
scott@lloydlg.com
*Admitted Pro Hac Vice*

__/s/ Jennifer W. Kennedy________
Jennifer W. Kennedy
California Bar # 185406
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025-7076
(626) 888-2263
jenniferkennedyesq@gmail.com
*Local Counsel*